I've never had one. Nobody wants to stay for the Spirit Airlines case? Hold on, Mr. Feinberg. We're going to wait until the courtroom is clear. Longer linemen getting on a plane. Let's see if they can't get out of here. Okay, Spirit Airlines v. Transportation Security Administration. Mr. Feinberg. Good morning, Your Honors. May it please the Court, Adam Feinberg on behalf of Petitioner Spirit Airlines. The main issue in this case is whether a user fee statute gives TSA authority to impose a fee when there is no user. It does not. The statute authorizes TSA to impose a fee on a passenger who takes a trip in air transportation to fund security services, all of which are... It requires your client to, when it collects these fees, to remit them to TSA, right? Only if it is a fee, not if it's not a fee. So the fee has to be imposed under subsection A. And the amounts collected under this section are payable to the administration, period. Well, Your Honor, that's in subsection E of the statute, and that phrase says, fees imposed and amounts collected under this section are payable to TSA. But the only possible way to interpret that phrase is that the and requires both of those conditions to be true. So it has to be both a fee imposed under subsection A and an amount collected. And let me walk you through why that's true. So subsection A says TSA imposes a fee on the passenger. Subsection E2 says the carrier collects a fee imposed under A1 from the passenger. And so if they're not both true... It's true that only passengers owe the fee, but when someone buys a ticket and plans to take a trip by air and this fee is collected on the assumption that they're going to do that, and then at the end of the month, sent to the administration, why is it sent to the And, and then, oh, lo and behold, we find out they're not going to, there's been a mistake for whatever reason. They didn't end up traveling. The statute allows the secretary, the agency, to refund, right? Because they didn't end up being a passenger, right? It does. And you think you can hang on to that? Well, yes, Your Honor, because that's exactly the agreement that my client has with the customers. But I want to finish the point I was starting before about the meaning of E1. Because E1 that has that phrase, fees imposed and amounts collected, if it's not both of those things, so in other words, if it's just a fee imposed, that amount is not payable to TSA. That amount is payable... But you pay it. Well, no, I'm separating the two concepts, a fee imposed and an amount collected, to prove the point that it has to be both of those conditions. Because if it's only a fee imposed, it's not payable to TSA. It's payable to the airline. Then the airline, under a separate provision, subsection E, well, under the several provisions of E, then the airline is the one who remits it to TSA. So it has to be, the only possible way of reading E1 is it has to be both a fee imposed under A1 and an amount collected. Because again, if it's only a fee imposed, then it's not payable to TSA. It's payable by the passenger to the  And section E3 confirms this view. This is the provision that talks about the time for remitting the fee. And it speaks of a fee collected, which is an amalgamation of the two concepts in E1, the fee imposed and an amount collected. So TSA only is entitled to a fee if it's both a fee imposed under A1 and the airline has collected it. Hasn't the airline collected these fees? I mean, the money went from the passenger to the airline. I don't understand the distinction. It has collected an amount, but it's not a fee until there's a passenger. Then why are you sending it at the end of the month to the administration? Well, I think there are two reasons for that. First of all, it was, you expect this passenger is going to travel and there's a fee imposed and collected under the statute. Well, I think the real reason, Your Honor, is that TSA has wrongly told airlines from the beginning that you have to collect and remit a fee when the ticket is sold. So this is at AR3. TSA says that, but that is not what the statute requires. Why would there be a refund? Why would there be a refund by my client? By the administration. Why would they refund it? Because, oh, they ended up not owing the fee, right? That only makes sense as a refund if it was collected as a fee. Well, I don't think this case is even about refunds because the majority of the funds at issue were never paid to TSA in the first place. But the statute, I'm reading the whole text of the statute. Doesn't it contemplate that the administration can refund some? It does, Your Honor, but I think that's... And one of those, and one of those contexts would be if the person who they, everyone thought would be a passenger ended up not being a passenger because they did not, in fact, end up traveling, right? Correct. Certainly the... And the statute makes it pretty clear the administration can then refund that, right? It does, but I think, Your Honor, that... But the reason is because, oh, that's not a fee that was actually collected under the statute because that person ended up not traveling, even though we originally were transmitted this money and kept it because we thought, everyone thought this would be a passenger and they imposed this fee and collected it under the statute. Well, I don't think, Your Honor, that's what subsection G was meant to... It wasn't meant to address this particular situation. It certainly doesn't use any words that are specific to this concept. But I think there's an even bigger problem for the government on that theory, and that is the government fully concedes that if the passenger doesn't travel and the amount is refunded, then the fee isn't owed. But the argument that you just... Therefore would be in excess of what is required. Right, but the government's argument is that that's because the TSA has discretion to do that. Well, the statute does say may. Exactly. But that's a problem because the government is talking out of both sides of its mouth. On the one hand, it says... That's what the statute says, though. No, the statute says, according to TSA and the government in its brief, it says we are entitled to a fee regardless of whether the passenger ever travels. This is at AR 196. I don't know. I mean, what the chief just described sounds like common sense to me. What are you telling your passengers? I buy a ticket. I cancel the ticket. You give me like 10% of what I paid for. And then I don't exercise the refund for many people because I forgot. What are you doing with the money and how are you categorizing that money? Because it seems to me the only person who's owed the money is the passenger who's not a party to this case. Well, I think at some level that is the person that is in some sense owed the money. But the passenger has agreed contractually under certain circumstances to let Spirit have the money. And that's exactly what the contract of carriage says. There's no dispute about that. The contract of carriage is very clear that everything you just said, Your Honor, is what is supposed to happen. So the issue here is really, does TSA have the authority to regulate that private contract between the airline and its customer? And it plainly does not. That authority is actually given to a different agency, the Department of Transportation, a point this Court made in the Bayou Lawn case. Can I just ask sort of the flip side, I guess, of Judge Abud's question is when the passenger enters into the contract with Spirit, aren't they agreeing to pay a fee as part of that contract? Well, I think they're agreeing to pay an amount that could be a fee at some future point. It's not, under the words of the statute, there's no fee incurred or imposed under the words of Subsection A until there's a passenger. Maybe it's just not in the record, but like when you go on Spirit's website and, you know, it's like $100 for a ticket and then it's $11 for security fee, right? That's what it tells you you're paying for? Right. Okay. Where does the authority come from for Spirit to get that $11 that it's designated as a security fee? Well, I think, Your Honor, that amount is just being held in limbo until it's determined whether or not there is a fee. All those fees that you collect by the end of the month, you have to remit, do you not, to the administration? At the end of the next month. But the vast majority of the fees were never even remitted. If I buy a ticket, I'm going to take that trip six months from now. And I pay that fee. At the end of next month, you're going to remit that to the administration, aren't you? Correct. Yep. Why? Because it was a fee that was collected under this statute. No, Your Honor, because TSA told us we have to. Why did you remit it? Because TSA at AR-3 has said more than 20 years ago, you have to do it. And airlines are being good citizens. But that shouldn't be held against them now when it turns out that it wasn't a fee in the first place. Can you address this for me? Which is, maybe this is, so one of the regulations says that air carriers cannot collect security fees that are not imposed by the statute. Is that what you're saying that you're doing? That you're collecting a fee? When you go in there, I click, you know, I pay $100 and I also pay the fee. Are you collecting something that's not imposed by the statute? Well, Your Honor, I don't think there's a provision that says exactly what you're— I just read it. But it's, I've got a section 1510.9 subsection D of, I guess, 49 CFR. But anyway. But the, I think the problem here, as I said before, is that TSA is the one who makes them do this. If the airline were doing it the way they thought the law works, we wouldn't have collected in the first place. You shouldn't be imposing this fee on any passenger until they board the plane. Well, that's exactly what the airlines might have done if TSA hadn't required them to do something else. That's the way y'all would have done it. You would have said, oh, before we take off, everybody, $11. Obviously not, Your Honor. But it could have been done a different way, just by collecting an amount that is held in limbo or in trust or something like that. So there's these hypotheticals about other ways that could have been established to comply with the statute. But you're not challenging any of these regulations about how the statute operates, right? I mean, this isn't like a lawsuit against the government to try to say that these regulations are inconsistent with the statute. You're just saying that you're complying with the regulations, right? But the complaint that we have that TSA requires that you to collect and remit at the time of sale isn't in any statute, and it isn't in any regulation. It's only in this guidance letter at AR-3. And that's what causes all of these problems we've been discussing. And just to be clear, you're saying the reason why Spirit gets to keep the money is because the passengers with full notice agree to that. Even if I don't travel, you don't have to give the money to TSA. You don't have to give the money to me. So this seems like a revenue-generating process as well. Is that a fair characterization? I think it is, Your Honor. But it's meant to subsidize or be part of a larger economic bargain where Spirit is charging a lower price for these fees with limited refund rights. The CFR, the statute also identifies, I think in the same section, all the other reasons how this money is used. It's not just to check your ID once you get through the security line. It's used for training. It's used for, you know, other things that it would seem would be similar to why Spirit might want to keep the money because you're paying pilots and stewardesses and all the flight attendants and those things. So I guess there is some suggestion from the statute that the fee is not so neatly only tied to travel. It also subsidizes the department in general. That's not correct, Your Honor. Every single one of the items in the list in subsection A1 is specific to either a flight like air marshals or airports. So it includes TSA screening, but it includes other airport security like security of the physical premise of the airport. But every one is specific to something that a passenger would be involved in because it relates solely to an airport or a flight. But is it not correct that the fees, though, are also used for other things, not just to check your ID? I mean, I thought that the regulations identified the various reasons for collecting the fee. Correct. But it has to be flight-related or airport-related. Okay. Thank you, Your Honor. Mr. Shaw, is there much we're missing about this? Excuse me? Is there anything we're missing about this? No, I don't think so. I think it seems that the panel has a very good understanding of sort of the statutory scheme and the requirements of the scheme. And if I could just touch on a few brief points. I mean, I think, you know, it's undisputed here that Spirit is collecting this money from the passengers in the name of a security fee. And I think it's inappropriate for Spirit to turn around and say after the fact that, well, actually, even though we labeled it as a fee on your receipt, we are now— These aren't passengers, after all. And it's not a fee under the statute. That's exactly right. With regard to contract, you know, I think the security fee is something that Congress required airlines to collect on behalf of TSA. The collection, the remittance, and the refund of the fee are governed by statute and regulation. So it's not up to Spirit to say, you know, although TSA has designed a refund scheme pursuant to statutory authority, we are going to, by contract, require passengers to agree to a different refund scheme than the one that TSA has laid out. Spirit doesn't get to use the security fee as a sort of bargaining chip to, you know, alter the terms of the transaction or reduce the— But that does give a little credence to the argument that TSA seems to be interfering with a contract between Spirit and its passengers. And if the passengers, with notice, understand that I'm paying this fee even if I don't travel and Spirit gets to keep it even though I don't travel, why does TSA get to come in and say that's not fair? I think it's not a question of fairness. You know, Spirit is free to contract over the airfare and the way it provides its services. So if it wants to say that if a passenger doesn't fly, they forfeit all of their airfare if they get 50 percent of it back, you know, if they get it back as a travel credit, that's entirely up to the contract between the airline and the passenger. And TSA is not trying to regulate that. All we are talking about here is specifically the $5.60 or $11.20 that Congress specifically required airlines to collect on behalf of TSA that TSA regulations say is held in trust for the government, must be accounted for separately. And I understand all of that. I guess I'm trying to understand if we agree with you that Spirit can't keep the money because no one traveled and TSA doesn't merit the money because no one traveled, but the person who didn't travel is not a party to the lawsuit. I guess I'm just trying to understand what that order or decision looks like.  So this is actually a problem that comes up with some frequency in other contexts. So what's happened here is that TSA has designed a refund scheme that is designed to ensure that the refund goes back to the passenger. So the way that the refund scheme works is that the airline first refunds the passenger, then they're allowed to claw back that money from TSA. TSA will effectively reimburse them for the refund. Now, the problem here is that the airlines have not carried out their obligation under that refund scheme to provide the refund to the passenger. And when that happens, then TSA obviously is not going to reimburse the airline for a refund that didn't actually occur. So this same situation comes up, for example, under 26 U.S.C. 6415. It's often the case that there are collection agents who are required to disperse a refund to the original payer of the tax. And sometimes they don't actually make that disbursement. They don't make that refund. And in those cases, the government does not refund the collection agent. That's the same result that occurs in all of these schemes. And I think under the statute, so in those cases, the fee stays with TSA. But that's entirely consistent with the statutory tax. And I would point the court to, I think, as Chief Judge Pire was saying, E1 and E3, which make clear that all amounts collected, all fees collected must go to TSA. The only exception to that is subsection G, which says that TSA may refund the passenger. And so obviously, if such a refund occurs under the refund scheme that TSA established, then the airline no longer has to give that money to TSA. But if no refund has been accomplished under subsection G, there is no statutory provision that allows the money to go back in the other direction, to go anywhere else except to stay with TSA. And that's the situation that we're in, because Spirit did not... And did an audit and determined that $2.8 million that they're holding, that they held, that they didn't have the authority to hold, right? Yeah, that's exactly right, Your Honor. And we know there was no effective refund under subsection G, because ultimately, all of the money that is at issue here ended up in Spirit's pockets as revenue. It did not, the passengers at issue got no economic benefit from those refunds. So there is no sense in which Spirit ultimately gave a refund. And therefore, there's no reason for TSA to recognize that and to reimburse Spirit for the refund that it never gave. What Spirit is doing is it's trying to have its cake and eat it too. It's purported to give a refund to the passenger that wasn't ultimately effective. But nonetheless, it wants to claw back or get reimbursement from TSA for those refunds that didn't actually happen. And there's no reason that TSA should allow that. Okay, if the Court has no further questions, we ask that the petition for review be denied. Thank you. Okay, you saved five minutes, four minutes, I'm sorry. Yes, Your Honor. Just a few quick points. First of all, I wanted to go back, Judge Bratcher, to the regulation that you had cited before, 1510.5A, where it says passengers may not be charged more than $5.60 per one-way trip or $11.20 per round trip. That's just talking about the amount. The issue here is a different issue. This is the one that I was citing. It's 1510.9D, direct air carriers and foreign air carriers may not collect security service fees not imposed by this part. Right, but I think... So if there was something that someone paid that Spirit was like, you owe us the $5 and you also owe us another $5 or something for a one-way ticket, that would violate this, right? Correct, but that's not the issue here. The issue here, nobody's disagreeing about the amount. But it seems like what you're saying is that you're saying that this thing that you imposed and required the passengers to pay wasn't really a security fee at all. Exactly. Not until there was a passenger who took the trip in air train. But you called it a security fee, right? Well, that's the label, but this is also... And isn't it a security fee in violation of this thing that says you're not supposed to impose security fees? I guess you could say that, but that's what TSA instructed. Could you like double the security fee? Absolutely not. Okay, well, then I don't get it. Like, it seems like you're imposing a security fee to declare it not to be a security fee. Like, I mean, there isn't, right? Well, I agree with that. But it's only because TSA said that this is what you're supposed to do. And that wasn't right. Otherwise, what you really would prefer to do is have everyone pay the $11 when they board the flight. Well, not literally. I fully appreciate that point. But we could hold it in trust or something. That's really where you want us to go. You're not a passenger until they board the flight. Well, I think that is exactly what the statute says. Maybe we should wait and collect it until they get in the air. Hold them hostage until they fork it out. As fun as that would be. We'll do that. As great for security as that would be. I guess, I don't understand how that matters. Because those are all hypotheticals that may, you know, the question here is not, could you have done this? The question is, you did it this way. You got the security fee at the time of booking. And you want to retroactively declare that not to be a security fee. And that's the problem I'm having with, like, I might think you, I mean, if you want to put like a credit card reader, and when you get on the plane, you have to pay the fee. That sounds reasonable to me. I don't, I haven't looked into it in depth. But that's not what you did. You collected the fee earlier, right? Fair enough. So I'd like to make three. And the reason you did it is because you expected them, that you thought the statute required. Well, I disagree with that. But I think we've been through that enough. But I want to go back. I want to make three brief points. First of all, this notion of the reliance on subsection G. This is fundamentally different than statutes like Internal Revenue Code section 6415. The Supreme Court talked about such a statute in Jefferson Electric Manufacturing. And it described this requirement that you refund the fee to the person who paid it as an additional substantive element for a refund. And it specifically talked about the normal rule before this law was passed, is that the person who paid the tax, the collector, could get a refund. And that was the way the law was until this statute was passed. So that statute 6415 and others like it doesn't command the result here. It does where it applies, but it doesn't apply here. Second of all, that refund provision talks about May. But that's a huge problem for the government because under its interpretation, it could decide not to give a refund even if Spirit were to refund the money to the passenger. And that just can't be right. And finally, the notion that TSA can regulate this sort of thing could cause huge chaos because there are multiple agencies that have fees and each one of them could require different rules in terms of how they're to be refunded. I hear you, Your Honor. Thank you very much.